IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL J. SVEZZESE, JR.          *
Individually and On Behalf of
All Others Similarly Situated     *

          Plaintiffs              *

          vs.                     *    CIVIL ACTION NO. MJG-01-1830

DURATEK, INC., f/n/a GTS DURATEK, *
ROBERT E. PRINCE and ROBERT F.
SHAWVER                           *

          Defendants              *

*     *     *     *     *     *

## MEMORANDUM AND ORDER

The Court has before it the Motion of Defendants to Dismiss

the First Amended Complaint, the Motion for Leave for Plaintiff

to File Notice of Supplemental Authority in Further Support of

Plaintiff's Opposition to Defendants' Motion to Dismiss, and the

materials submitted by the parties relating thereto.  The Court

finds that a hearing is unnecessary to resolve this matter.

## I.    BACKGROUND[1]

Defendant Duratek, Inc. ("Duratek") provides services

related to radioactive waste management, including

transportation, storage, processing and disposal for government

---

[1]The facts are stated herein as alleged in the Amended
Complaint.



and commercial customers.  Am. Compl. ¶ 19, 29.  Duratek's stock is traded on the NASDAQ.  Id. at ¶ 137.  Defendant Robert E. Prince is Duratek's Chief Executive Officer and President, and Defendant Robert F. Shawver is Duratek's Chief Financial Officer and Executive Vice President.  Id. at ¶ 20-21.

Plaintiff Michael J. Svezzese, Jr. ("Plaintiff"), a Duratek shareholder, filed the instant lawsuit individually and on behalf of all others similarly situated, on June 22, 2001.  Plaintiff's two count Amended Complaint arises out of Duratek's press release announcement on March 14, 2001 that "significantly greater than budgeted burial and transportation costs were incurred in its commercial waste processing operations" and that these additional costs would require adjustments to the company's financial results for the fourth quarter and fiscal year of 2000 and the first quarter of 2001.  Id. at ¶ 98.  In that press release, Duratek stated that it had begun a comprehensive review of its commercial waste processing operations and would postpone its release of year 2000 financial results until the review was completed.  Id.

On April 18, 2001, Duratek issued a press release announcing the fourth quarter and year 2000 financial results.  Id. at ¶ 102.  The press release also stated that the company was revising previously reported financial results for the first three

quarters of 2000 and its consolidated financial results for 1999. Duratek's news release explained that the principal reason for the revisions to the 2000 financials was to "reflect the reconciliation of unprocessed waste to revenues and costs" for the relevant periods due to the fact that "full reconciliations of quarterly inventories of unprocessed waste were not performed at each quarter end in 2000."  Id.

For accounting purposes, Duratek utilized the "percentage-of-completion" ("POC") method for recording revenues, costs and profits associated with long-term contracts, which comprise the majority of Duratek's revenue.  Id. at ¶ 42-47.  The POC method allows Duratek to record revenue as it performs a contract.[2]  Id. at ¶ 44.  Using this method, Duratek is to first estimate the total costs of performing a contract.  Then, as it performs the contract, it is to periodically compare accrued actual costs to its estimate of total costs.  The comparison is to yield an estimate of the amount of the contract that has been performed and, accordingly, the amount of revenue that has been earned and may be recorded on the company's books.  Id.

Accounting guidelines issued by the American Institute of

---

[2]In contrast, under the completion method of accounting, the entity does not record any revenue until the entire contract is performed, at which time the entire revenue derived is recorded at once.  Id. at ¶ 43.

Certified Public Accountants state that the POC method is the preferred method of accounting for long-term contracts as long as the entity is able to make reasonably dependable estimates of contract costs and progress toward completion of the contract. Id. at ¶ 121.

Plaintiff asserts that Duratek did not sufficiently compare its actual costs of contractual performance with its estimates of total costs, that this failure in turn caused Duratek to fail to adjust its accounting to reflect the fact that actual costs were much greater than had been estimated, and that these accounting errors resulted in overstatements of revenues in press releases and SEC filings. Id. at ¶ 4-5. Plaintiff alleges that the errors were caused by Defendants' "materially deficient" internal controls used to track actual costs and compare them to estimated costs. Id. at ¶ 115, 48, 81. Thus, Plaintiff asserts that although information concerning the actual costs was available, Defendants did not reconcile quarterly inventories of unprocessed waste with deferred revenue and operating costs at any time during the first three quarters of 2000. Id. at ¶ 4, 48-49. As a result, Duratek's profits, net income and earnings per share were materially overstated. Id. at ¶ 5, 10, 86, 93, 106, 117.

For example, as calculated from Duratek's original and amended quarterly reports during the first three quarters of

2000, the Amended Complaint alleges the following:[3]

<u>For the three months Ended March 31, 2000</u>:

|  | <u>As Reported</u> | <u>As Restated</u> | <u>Difference</u> |
|---|---|---|---|
| Revenue | $41,102 | $41,013 | $89 |
| Gross Profit | $9,630 | $9,161 | $469 |
| Income from Operations | $2,945 | $2,212 | $733 |

<u>For the three months Ended June 30, 2000</u>:

|  | <u>As Reported</u> | <u>As Restated</u> | <u>Difference</u> |
|---|---|---|---|
| Revenue | $52,772 | $50,908 | $1,864 |
| Gross Profit | $15,122 | $11,871 | $3,251 |
| Income from Operations | $6,885 | $3,481 | $3,404 |

<u>For the three months Ended September 30, 2000</u>:

|  | <u>As Reported</u> | <u>As Restated</u> | <u>Difference</u> |
|---|---|---|---|
| Revenue | $73,856 | $71,009 | $2,847 |
| Gross Profit | $19,933 | $17,376 | $2,557 |
| Income from Operations | $8,774 | $5,781 | $2,993 |

Am. Compl. ¶ 107.

Plaintiffs advance the following claims:

Count I:   Violation of Section 10(b) of the Securities Act of 1934 and Rule 10(b)(5) promulgated thereunder; and,

Count II:  Violation of Section 20(a) of the Exchange Act.

The parties are before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

---

[3]The Court does not cite to the charts in the Amended Complaint in their entirety; rather the Court includes a sampling of the figures therein to give examples of the monetary differentials involved. <u>See</u> Am. Compl. ¶ 107.

II.  <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(6) is a means of testing the legal sufficiency of a complaint.  "The question is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the Complaint states any valid claim for relief."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 336 (2d ed. 1987).  The Court, when deciding a motion to dismiss, must consider well-pled allegations in a complaint as true and must construe those allegations in favor of the plaintiff.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421-22 (1969).  The Court must further disregard the contrary allegations of the opposing party. <u>See</u> <u>A.S. Abell Co. v. Chell</u>, 412 F.2d 712, 715 (4th Cir. 1969). However, a complaint may be dismissed if the law does not support the conclusions argued, or where the facts alleged are not sufficient to support the claim presented.

III. <u>DISCUSSION</u>

A.   <u>Liability under Section 10(b) and Rule 10b-5</u>

"To survive a motion to dismiss, Plaintiffs must have alleged facts that show that they are entitled to relief on their substantive causes of action."  <u>See</u> <u>In re Criimi Mae, Inc. Sec.</u>

6

Litig., 94 F.Supp.2d 652, 656 (D.Md. 2000). To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)(5) of the Securities and Exchange Commission, Plaintiff must allege that: 1) the Defendants made a false statement or omission of material fact; 2) the statement or omission was made with scienter, a "mental state embracing an intent to deceive, manipulate or defraud;" 3) Plaintiff's reliance upon the statement was justifiable; and, 4) the statement was the proximate cause of the Plaintiff's damages. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n.12 (1976) (emphasis added). See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 613 (4th Cir. 1999). Actions filed under Section 10(b) and Rule 10(b)(5), being fraud claims, must satisfy the dictates of Rule 9(b) which requires that "all averments of fraud or mistake must be stated with particularity." Fed.R.Civ.P. 9(b).

Plaintiffs must also comply with the pleading requirements of the Private Securities Litigation Reform Act (hereinafter "PSLRA") which tightened the requirements for pleading scienter in securities fraud actions. In re Manugistics Group, Inc. Sec. Litig., No. S98-1881, 1999 WL 1209509 (D.Md.). The PSLRA standard is higher than that imposed under Rule 9(b) which allows "malice, intent, knowledge, and other condition of mind of a person. . . [to] be averred generally." Fed.R.Civ.P. 9(b). See

In re Criimi Mae, 94 F.Supp.2d at 656; In re Manugistics Group, Inc., 1999 WL 1209509 at *1.  Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind," for each alleged misrepresentation or omission.  15 U.S.C. § 78u-4(b)(2)(emphasis added).

The PSLRA does not define what pleaded facts are sufficient to give rise to a "strong inference" of scienter, and there is widespread disagreement among the circuits as to what a plaintiff must state to plead scienter under the PSLRA.  See In re Criimi Mae, 94 F.Supp.2d at 658-59 (discussing interpretations of the PSLRA's "strong inference" requirement in various circuits); In re MicroStrategy, Inc. Sec. Litig., 115 F.Supp.2d 620, 628-29 (E.D.Va. 2000)(discussing differing interpretations of the PSLRA's "strong inference" requirement).  The question arose in Phillips v. LCI; however, the Fourth Circuit did not reach the issue because it found that the plaintiff stockholders "failed to allege facts sufficient to meet even the most lenient standard possible under the PSLRA, the two-pronged Second Circuit test." 190 F.3d at 621.

The Second Circuit test, articulated in In re Time Warner, Inc. Sec. Litig., 9 F.3d 259, 268-69 (2d Cir. 1993), provides that a plaintiff may plead scienter by alleging specific facts

that either: 1) constitute circumstantial evidence of conscious or reckless behavior, or 2) establish a motive to commit fraud and an opportunity to do so.  Like the Phillips Court, this Court need not interpret the meaning of the PSLRA's "strong inference" requirement because Plaintiff's claims are insufficient to meet the most lenient standard possible under the PSLRA, the Second Circuit's scienter test.

B.    Scienter

1.    Conscious or Reckless Behavior

Under the first prong of the Second Circuit's standard, a plaintiff may plead scienter by alleging facts that constitute circumstantial evidence of conscious or reckless behavior. "Securities laws generally define recklessness as an act 'so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"  Phillips, 190 F.3d at 621, quoting Hoffman v. Eastabrook & Co., 587 F.2d 509, 517 (1st Cir. 1978).  Thus, in this context, recklessness is viewed as a lesser form of intent, rather than a greater degree of ordinary negligence.  See In re Criimi Mae, 94 F.Supp.2d at 660.  Mere negligence is insufficient

to support liability. See Phillips, 190 F.2d at 621, citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 215 (1976).

The burden placed upon Plaintiff is great. Plaintiff's allegations must have "a substantial factual basis in order to create a 'strong inference' that the defendant acted with the required mental state." Phillips, 190 F.3d at 621 (citations omitted). "Of course, [these] factual allegations must be true to provide the basis for a cause of action." Phillips, 190 F.3d at 615. A cause of action does not lie when "[t]he complaint rests on mischaracterizations" of the events at issue. Id.

Plaintiff asserts that the following allegations, taken as a whole, are sufficient to establish a strong inference that Defendants' conduct was reckless:

> a.   The GAAP violations;
>
> b.   The simplicity of the accounting rules violated;
>
> c.   The deficiency of Duratek's internal controls;
>
> d.   The magnitude of the restatement.

### a.   The GAAP Violations

Plaintiff acknowledges that failures to observe GAAP and other accounting guidelines, standing alone, are not enough to satisfy the PSLRA's heightened pleading standards. Pl. Opp. p. 12. Scienter "requires more than a misapplication of accounting

principles," and "[a]llegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."  Chill v. General Elec. Co., 101 F.3d 263, 270 (2nd Cir. 1996).  See also In re Peritus Software Servs., Inc., 52 F.Supp.2d 211, 223-24 (D.Mass. 1999)(finding GAAP violations probative of scienter if other circumstances are pleaded evidencing fraudulent intent); Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F.Supp. 1297, 1313 (C.D.Cal. 1996)(holding that "[w]hen combined with other circumstances suggesting fraudulent intent . . . allegations of improper accounting may support a strong inference of scienter").  Thus, the alleged GAAP violations can only raise a strong inference of scienter if Plaintiff's other allegations evince fraudulent intent.

       b.    The Simplicity of the Accounting Rules Violated

Plaintiff asserts that the simplicity of the accounting rules violated, the POC method of accounting, creates an inference of scienter.  Plaintiff cites to MicroStrategy Inc. Sec. Litig., 115 F.Supp.2d 620, 638 (E.D.Va. 2000), which states that "if the GAAP rules and [internal] accounting policies Defendants are alleged to have violated are relatively simple, it

11

is more likely that the Defendants were aware of the violations and consciously or intentionally implemented or supported them, or were reckless in this regard." It should be noted that MicroStrategy was a case involving allegations of insider trading, not present here, which are highly probative of motive. As with Plaintiff's allegations of violations of accounting principles (discussed above), the case law holds that simplicity of the principles cannot, alone, raise a strong inference of scienter, but can only do so when combined with other allegations evincing fraudulent intent. See e.g. Id.; In re Telxon Corp. Sec. Litig., 133 F.Supp.2d 1010, 1030-31 (N.D.Ohio 2000).

Additionally, it should be noted that Plaintiff does not cite to any authority for the proposition that POC accounting principles are simple. c.f., In re Boeing Sec. Litig., 40 F.Supp.2d 1160 (W.D.Wash. 1998)(POC accounting principles not described as simple).

c. The Deficiency of Duratek's internal controls

Plaintiff asserts that Duratek's "materially deficient" internal controls, used to track actual costs and compare them to estimated costs, supports a strong inference that Defendants acted with scienter. Plaintiff cites a number of cases for this proposition; however, a review of the cases cited indicates that

12

they contain allegations of pervasive, ongoing deficiencies in the internal controls that were known to the defendant companies before the alleged fraud at issue occurred.  For example, In re Ikon Office Solutions, Inc. Sec. Litig., 66 F.Supp2d 622, 631 (E.D.Pa. 1999), cited to by Plaintiff, involved a situation where various internal memoranda and an audit raised "numerous red flags evidencing that the Company's internal controls were grossly deficient and that the financial data being generated by its financial reporting mechanism was so pervasively inaccurate and unreliable that reliance on that information for financial statement purposes was precluded by GAAP and GAAS;" information which was allegedly disregarded by Defendant.  In Ikon, the

> Plaintiffs stress that [Defendant's] internal audits gave it a deep understanding of the existence and significance of these problems . . . and they allege facts suggesting that [Defendant] had knowledge that the problems it identified in 1996 persisted up to the time the unqualified audit statement was issued. This is supported by plaintiffs' claims that the same items [Defendant] had highlighted as problematic in 1996 were the source of many of the charges in 1998. In short, plaintiffs' allegations regarding [Defendant's] knowledge of the failure of internal controls and the significance of those problems are relevant claims of scienter.

Id.

Such allegations of Defendant's knowledge of "pervasive economic problems throughout the company's internal controls" are simply not present in the instant case.  Id. at 630.  While, of

13

course, "internal policies are relevant to scienter to the extent that they correspond to violations of GAAP and GAAS or that they indicate an auditor's awareness of problems in corporate finances," such allegations cannot, without accompanying allegations of fraudulent intent, be sufficient to raise a strong inference of scienter. Id. at 631. Indeed, one of the cases relied on by Plaintiff states that "this factor by itself is not particularly compelling where the violations of internal policies are not materially different from the deviations from GAAP." Gelfer v. Pegasystems, Inc., 96 F.Supp.2d 10, 17 (D.Mass.,2000).

The Court should also note that most of the cases cited by Plaintiffs also include other allegations which strongly give rise to an inference of scienter on their own, such as insider trading. See e.g. Provenz v. Miller, 102 F.3d 1478 (9th Cir. 1996).

In sum, while there are cases in which violations of internal policies can be probative of scienter, absent allegations of knowledge and disregard of such "red flags" on Defendant's part or some other allegations evincing fraudulent intent, allegations regarding deficient internal controls are not sufficient to raise a strong inference of scienter in the instant case.

14

####    d.    The magnitude of the restatement

Plaintiff asserts that the sheer magnitude of the overstatements in this case is strongly suggestive of scienter and, at the very least, adds to the inference when considered alongside his other allegations.

Although Duratek's restatements of net income were material, they are not of the nature that would give rise to a strong inference that they resulted from fraud.[4]  They were, for example, far less severe than the restatements made in cases relied upon by Plaintiff.  In In re MicroStrategy, the misstatements at issue reported that the company was earning millions of dollars in profits each quarter, when in fact it was losing millions per quarter.  MicroStrategy, 115 F.Supp.2d at 624-25.  In total, the false financial statements in MicroStrategy took a company that lost $36.8 million over nearly a two year period and falsely presented it as a company that earned profits of $18.9 million over that period.  Id.  The MicroStrategy court found that the misstatements were "breathtaking" and constituted a "night-and-day" difference.  Id. at 636-37.

Similarly, the restatements in In re Telxon Corp., also cited by Plaintiff, were of similar magnitude.  In Telxon, among

_____

[4]See infra Section I, page 5 for numerical examples.

15

the restatements were 200% downward adjustments of earnings for two separate quarters.  <u>Telxon</u>,133 F.Supp.2d at 1015.  Over $18 million in profits were eliminated by the restatements, "effectively eliminating all profits and growth Telxon publicly claimed to be experiencing for the past three years."  <u>Id.</u>

In contrast, Duratek's financial statements did not disguise a failing company or wipe out years' worth of reported profits. Even after being restated, Duratek's financials showed a profit during each of the three quarters at issue.  The Court finds that the restatements made by Duratek were simply not of a magnitude sufficient to raise an inference of scienter.

In sum, although Plaintiff alleges that Defendants violated simple GAAP principles, as well as internal policy, resulting in restatements of a material magnitude, these allegations, taken as a whole, are insufficient to raise a strong presumption of scienter.

### 2.   <u>Motive and Opportunity</u>

Under the second prong of the Second Circuit's scienter standard, plaintiffs may plead scienter by establishing a motive to commit fraud and an opportunity to do so. "In order to demonstrate motive, a plaintiff must show 'concrete benefits that could be realized by one or more of the false statements and

wrongful non-disclosures alleged.'" Phillips, 190 F.3d at 621, quoting Shields v. Citytrust Bancorp, Inc. 25 F.3d 1124, 1130 (2d Cir. 1994). Opportunity may be established by showing that Defendants had "the means and likely prospect of achieving [the] concrete benefits [desired] by the means alleged." In re Criimi Mae, 94 F.Supp at 660, quoting Shields, 25 F.3d at 1130.

Without doubt, Defendants, holding positions of authority with Duratek, had the opportunity to commit fraudulent acts. See Phillips, 190 F.3d at 621 (holding that Defendant, as Chairman and CEO of company had opportunity to cause artificial depression in price of stock); In re Criimi Mae, 94 F.Supp.2d at 660 (holding that officers of company had opportunity to commit fraud given their positions of power and authority in company). At issue is whether Plaintiff has pled facts sufficient to establish that Defendants had a motive to commit fraud.

However, the Amended Complaint does not plead motive. Plaintiff asserts in his Opposition that he is "not required to plead motive in order to demonstrate the requisite fraudulent intent." Pl. Opp. p. 24. Therefore, Plaintiff does not allege scienter by pleading a motive to commit fraud and an opportunity to do so.

In sum, Plaintiff fails to "state with particularity facts giving rise to a strong inference that defendant acted with the

17

required state of mind," for the alleged fraud.  15 U.S.C. § 78u-4(b)(2).  Accordingly, Count I of the Amended Complaint shall be dismissed.[5]


B.    Section 20(A) Control Person Liability

Plaintiff argues that Defendants are subject to control person liability under Section 20(a) of the Exchange Act; however, their failure to state a claim for a primary securities fraud violation precludes a finding of control person liability. See In re Criimi Mae, 94 F.Supp.2d at 662; In re Cyromedical Sciences, Inc. Sec. Litig., 884 F.Supp. 1001, 1011 (D.Md. 1995). Accordingly, Count II of the Amended Complaint shall be dismissed.

---

[5]The Court has reviewed Aldridge v. A.T. Cross Corp., No. 01-1989, 2002 WL 407887 (1st Cir. 2002), which Plaintiff filed as "supplemental authority in further support" of his Opposition. The Court finds that Aldridge does not compel a different result from that reached here.

## IV.   CONCLUSION

For the foregoing reasons:

1.   The Motion of Defendants to Dismiss the First Amended Complaint IS GRANTED.

2.   The Motion for Leave for Plaintiff to File Notice of Supplemental Authority in Further Support of Plaintiff's Opposition to Defendants' Motion to Dismiss IS GRANTED.

3.   Judgment shall be entered by separate Order.

SO ORDERED this *26th* day of April, 2002.

_____
Marvin J. Garbis
United States District Judge

APR 3 0 2002

19